Mrs. Sophie Buisson *v.* S. D. McNeil.

The reference to a plan in an act of sale makes the plan as much a part of the act as if appended to it.

APPEAL from the District Court of the parish of Jefferson, *Clarke,* J. *Redmond,* for plaintiff and appellant. *Roselius,* for defendant.

Campbell, J. The defendant being the owner of a tract of land bounded by St. Mary, Felicity, Camp and Chesnut streets, caused a survey and figurative plan of it to be made by *Hugh Grant,* City Surveyor. The land as represented on the plan, is divided into seventeen lots, numbered from one to seventeen inclusive; nine of which lots, front on St. Mary, and the remaining eight on Felicity street. Midway between St. Mary and Felicity street and parallel with them, is an alley ten feet wide, opening on Chesnut street; the lines of the alley on either side, representing the rear lines of the lots fronting respectively on St. Mary and Felicity streets. On the space representing the alley is written " Alley way of ten feet in common to all the lots." The plan is dated March 13, 1849, and signed by *Hugh Grant,* City Surveyor. By this plan, the defendant sold several of the lots fronting on Felicity street, making in the different acts of sale express reference to it, as deposited in the office of *T. S. Gilly,* a Notary Public. One of these sales was made to *Elkin,* and the act, (which is dated July 16, 1849,) contains the following description of the lot: "A certain lot of ground situated in the city of Lafayette," etc., "in the square bounded by Felicity, St. Mary and Camp streets, designated by the number sixteen, on a plan drawn by *Hugh Grant,* City Surveyor of Lafayette, dated the 13th March, 1849, and deposited in the office of *T. S. Gilly,* a Notary Public, in this city, said lot measuring twenty-seven feet," etc., "front on Felicity street, etc., and twenty-seven feet, etc., on the rear line, fronting on an alley ten feet wide, for the common use of all the lots fronting, on Felicity street."

This lot, on the 7th January, 1850, was purchased from *Elkin* by plaintiff; the description and recitals of the deed being substantially the same as in the deed to *Elkin.* The alley is described in the reference to it, as " common to this and other lots fronting on Felicity street." Similar recitals are found in other deeds of sale from *McNeil* of lots on Felicity street. The sales are all made with special reference to the plan of *Grant,* nor could the lots be identified without consulting the plan.

In April, 1851, defendant advertised for sale at auction, the lots on St. Mary street, numbered from one to nine inclusive, and exhibited a plan resembling in all respects, the map of *Grant,* except that the space between Felicity street and the alley was not represented as divided into lots, nor were the words " common to all the lots," written between the lines representing the alley, its width alone being given. In the auctioneer's advertisement, the lots are described as fronting on St. Mary street, and having on their rear line an alley of ten feet width, opening on Chesnut street.

The sale of this property has been arrested by an injunction obtained at the suit of plaintiff, on the ground that there has been an appropriation of the

BUISSON
*v.*
McNEIL.

alley way for the benefit of the lots fronting on Felicity street, and that the intended sale will cause a loss of her exclusive right to the alley way in common with the owner of the other lots fronting on Felicity street.

Under these facts, which are perhaps stated with unnecessary particularity, the only question which arises is whether the proprietors of the lots fronting on Felicity street have acquired an exclusive right to the use of the alley, or whether the right of use is common to them and the proprietors of lots fronting on St. Mary street. In other words, did the defendant, in establishing the alley, create a servitude in favor of the whole property, or only of that part of it fronting on Felicity street?

The words, "for the common use of all the lots fronting on Felicity street," though not necessarily exclusive, apparently, so limit the use, that, standing alone, we would be disposed to give to them the effect claimed by plaintiff; but when considered in connection with the surrounding transactions and particularly in connection with the plat of *Grant*, which by the reference made to it, becomes as much a part of the act of sale as if appended to it; we cannot doubt but that the intention of defendant in laying out the alley was that the proprietors of all the lots, whether on Felicity or St. Mary street should equally enjoy and use it. This interpretation is consistent with what may be supposed was the object of the parties, and gives effect to every clause of the act.

That the plat produced in court is the plat referred to in the various acts of sale, has been satisfactorily proved; for although it seems that an ineffectual search was made for it in the office of the Notary before the institution of the suit, it was produced in court by the Notary with whom it was deposited on the day first fixed for the trial, and was some weeks afterwards, on the morning of the trial, taken from his office and brought into court, the Notary being then absent from the city. The plat was properly received in evidence and the words "in common to all the lots," between the lines which represent the alley are conclusive that the dedication was not for the exclusive use of the lots fronting on Felicity street, but that it was intended equally for the benefit of those fronting on St. Mary street.

Judgment affirmed.

Rehearing refused.