(44 South. 880.)

No. 16,638.

NICK v. BAUTOVICH.

(Oct. 21, 1907. Rehearing Denied Nov. 18, 1907.)

1. AUCTIONS—SALE OF LAND—PLAN—RIGHTS OF PURCHASERS.

Where a plan by which an urban lot was sold at public auction was so grossly inaccurate as to the boundary lines as to represent the area of the property as much greater than it really was, and the adjudicatee was misled by the plan, the adjudication will be canceled on the ground of error as to the thing intended to be purchased.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Auctions and Auctioneers, § 32.]

2. SAME.

In such a case the verbal declarations of the auctioneer as to nonwarranty of the extent of one of the boundaries will not affect the adjudicatee, who did not hear such declarations, if made, but purchased on the faith of the plan referred to in the advertisement and exhibited by the auctioneer at the time of the sale.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Auctions and Auctioneers, §§ 31, 32.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; George Henry Théard, Judge.

Action by Henry L. Nick against Ferdinand C. Bautovich. Judgment for plaintiff, and defendant appeals. Reversed, and suit dismissed.

Felix Joseph Dreyfous and Alfred David Danziger, for appellant. Charles Rosen, for appellee.

LAND, J. This is a suit to compel the acceptance of title and the payment of the price of a certain lot of ground, with the improvements thereon, designated as "Lot No. 1" on a plan of Charles A. Zimgle, deposited in the office of Cenas, notary. The petition further describes the lot as forming the corner of Tchoupitoulas street and Howard avenue, and as measuring 42 feet, 2 inches, and 2 lines front on Tchoupitoulas street, by 83 feet, 6 inches deep on the line of lot No. 2, and 90 feet, 2 inches, and 7 lines deep and front on Howard avenue. The petition alleges that said lot was adjudicated to the defendant at public auction at the price of $4,625, and that defendant refused to accept the title and to pay the price of adjudication.

Defendant for answer averred that he had never seen said property, but purchased on the faith of the plan exhibited by the auctioneer at the time of the sale; that said plan gave the measurement of the front and said lines of the lot as alleged in the petition, but indicated the rear line as extending more than one-half of the width of the front line; that, as the title gave three measurements, the defendant had the lot surveyed, and discovered that the rear line was only 8 feet and 5 inches in length. The answer further charges misrepresentation as to the income of the property, and avers that the defendant would not have bid in said property, had he been informed as to its true measurements.

Defendant prayed to be hence dismissed, and for judgment canceling the adjudication and ordering the return of the deposit of $462.50 made by him at the time thereof.

The property was advertised and sold, not by the plan referred to in the titles, but by what is called an "auctioneer's plan," exhibited at the time of the sale.

The titles did not give the rear boundary of the lot, and the plan referred to in the titles had been lost.

The auctioneer's plan represented the front of the lot as covered by a three-story building, which, with other buildings, did not extend to the rear line of the property. The measurement of this rear line was not given, but to the eye appeared to be about one-half of the length of the front line, which was stated to be 42 feet, 2 inches, and 2 lines in length. According to the plan exposed at the time of the sale, this rear line should have been 19 feet and 9 inches in length. Its actual length, however, was only 8 feet and 5 inches. According to the plan the lot should have contained a superficial area of 2,589 square feet. It contained in fact 2,113 square feet. The difference is 476 square feet, or more than one-fifth of the actual superficial area of the lot. The gross error in the auctioneer's plan consisted in drawing the line between lots No. 1 and 2 at such an angle and direction as to infringe on lot No. 2 to the extent of 476 square feet, included within a triangle with its apex on the dividing line between said lots and its base, of 11 feet, 4 inches, on the rear line of lot. The difference between the auctioneer's plan and the plat of actual survey filed in evidence jumps to the eye, and leaves no room to doubt the gross inaccuracy of the former. This mistake or misrepresentation was well calculated to mislead or deceive bidders, and to superinduce material error as to the area of the lot exposed for sale. In sales of real estate, when not per aversionem, the law considers an overplus or deficit by one-twentieth part of the measure as material. Civ. Code, art. 2494. In the case at bar the alleged deficit is more than four times greater. The defendant did not know the property, and had nothing to guide him but the auctioneer's plan. He was thereby led into material error, and the case is with him, unless the evidence shows that he was informed of the true situation.

As before stated, the property was advertised and sold per the auctioneer's plan, which was a representation by the vendor of the situation and extent of the lot, and he warranted, not only what was expressly stated on the plan, but what might be fairly inferred therefrom. Keay v. N. O. Canal Co., 7 La. Ann. 259; Bruning v. N. O. Canal Co., 12 La. Ann. 541. That the measurement of the rear line was not stated in figures was of no consequence, as it could be ascertained with mathematical certainty from the data furnished by the plan, and could be approximated by a visual comparison with the other boundaries.

The auctioneer testified in part as follows:

"I first started to give the dimensions of the property. I said the dimensions are so and so, and the title does not give the rear dimension. Therefore I cannot give them. I don't know what they are. I sold the property according to that title, and according to this plan."

In answer to questions from counsel for plaintiff, the auctioneer further stated that, as the title did not give the rear measurement, he did not propose to give it, and the purchaser would take the property subject to the title. On cross-examination the same witness said that he stated:

"I am selling according to the plan, be the rear dimensions what they may."

Plaintiff was present at the sale from the beginning, and testified that the auctioneer did not, to his knowledge, call attention to the fact that no rear measurement was given on the plan, or state that the purchaser would buy subject to whatever the rear measurement might be. Joseph L. Loeb, a witness for plaintiff, was present at the sale, heard the auctioneer cry the property and announce the leases thereon, but did not recollect that he said anything about the measurements. The defendant testified that he was at the sale from the beginning, heard everything

that was said, and that the auctioneer did not say anything about rear measurements, but only gave the front and side measurements. Robert Waterman testified that he was standing by defendant at the time, and that the auctioneer said nothing about the rear measurement. Dr. Joseph M. Elliott testified that he was present during the whole time the sale was going on and heard nothing about the rear measurement of the property. Mr. Spear, an auctioneer and real estate agent, testified that he was present, paying attention, hearing everything that transpired, and that he did not hear anything about the rear measurement of the property.

According to the plan the auctioneer was exposing for sale a quadrilateral piece of ground, with unequal sides, and at the same time was, according to his version, announcing that the vendor would not warrant the dimension of the rear side. Such an announcement would have rendered the plan worthless, as no purchaser could know, or even guess, the shape or area of the lot offered for sale. It might be a triangle, or it might be a quadrilateral. Be this as it may, we are of opinion that evidence of verbal declarations changing the description of property exposed for sale at public auction as per plan exhibited to the prospective bidders, if admissible at all, should be received with great caution, and should show with reasonable certainty that the bidders heard and understood the new terms on which the property would be adjudicated. In the case at bar the evidence is convincing that what was said by the auctioneer was not heard by the defendant, or by the plaintiff, or by any other person who was present. If the defendant's bid was predicated on the plan, and the property was not offered on the plan as advertised, there was no aggregatio mentium and consequently no adjudication.

It has been held that an auctioneer cannot change the conditions of sale as advertised, and, if he should do so, the purchaser, not consenting, is not bound. Nott & Co. v. Oakey, 19 La. 18. Any other rule would breed confusion and uncertainty and furnish a trap for bidders.

The discrepancy between the lot sold as per plan and the lot tendered is so glaring that we are of opinion that a case of error as to the thing sold is made out. The error is as to boundary as well as quantity.

It is therefore ordered that the judgment appealed from be reversed, and it is now ordered that the plaintiff's demand be rejected, and his suit be dismissed, with costs in both courts, that the adjudication of the lot in question be canceled, and that the defendant have and recover the deposit of $462.50 made by him.